STERLING DRUG, INC., APPELLEE, *v.*
WICKHAM, EXEC. DIR., ET AL., APPELLANTS.

[Cite as Sterling Drug v. Wickham (1980),
63 Ohio St. 2d  16.]

(No. 79-237—Decided July 2, 1980.)

*Messrs. Lane, Alton & Horst, Mr. Jack R. Alton, Mr. William M. Lane* and *Mr. David Wm. T. Carroll,* for appellee.

*Mr. William J. Brown,* attorney general, and *Mr. Richard J. Forman,* for appellants.

STEPHENSON, J.  In *Burger Brewing Co.* v. *Liquor Control Comm.* (1973), 34 Ohio St. 2d 93, this court held that pre-enforcement *review* of an agency rule under now repealed R. C. 119.11 was precluded, but that the validity of the rule could properly be adjudicated by a court, in the exercise of its sound discretion, under the Declaratory Judgment Act if a justiciable controversy existed between adverse parties and speedy relief was necessary to the preservation of rights which might otherwise be impaired or lost.[2]

---

[2] R. C. 2721.10 essentially provides that in a declaratory judgment action issues of fact are to be determined as issues of fact are determined in other civil actions in the declaratory judgment court. Implicit therein is the requirement that a judgment respond to the evidence before the declaratory judgment court. In adjudicating the lawfulness and reasonableness of a rule adopted by an administrative agency in a declaratory judgment action, the record of the evidence advanced before the agency in a R. C. 119.03(C) hearing is relevant and material and should be introduced by stipulation, as was done in the instant case, or, absent stipulation, by order of the court.

After remand to the appellate court in *Burger,* the declaratory judgment issued was subsequently reviewed by this court in *Burger Brewing Co.* v. *Thomas* (1975), 42 Ohio St. 2d 377, and disposition made by the court solely upon a question of law, *i.e.,* that the General Assembly had not delegated authority to promulgate the rule. Thus, the posture of each appeal as presented to this court was such that this court was not required to explicate whether the nature of the subject matter of such a declaratory judgment action, *i.e.,* the validity of an agency rule or regulation, mandated procedural or adjudicatory limitations different from principles of law normally applicable to such proceedings.

It appears from the briefs that both parties would apparently agree that the ultimate test as to the validity of an agency rule is whether it is unreasonable or unlawful. In light of incorporation of that standard in syllabus language in both *Zangerle* v. *Evatt* (1942), 139 Ohio St. 563, and *Fortner* v. *Thomas* (1970), 22 Ohio St. 2d 13, and the adoption of that standard by the General Assembly in R. C. 119.03(C) to be applied by an agency in resolving challenges in a hearing respecting adoption, amendment or recision of agency rules, the application of that standard in a declaratory judgment proceeding is both logical and proper.

A rule adopted by an administrative agency may be invalid by being unreasonable or unlawful for various reasons. See enumeration and discussion in 2 Cooper, State Administrative Law, 781, Chapter XX. Ohio courts have, *inter alia,* invalidated agency rules for the reason that the rule promulgated exceeded the rule making authority delegated by the General Assembly (*Burger Brewing Co.* v. *Thomas, supra* [42 Ohio St. 377] ), that the agency failed to comply with the procedural requirements set forth in R. C. Chapter 119 respecting adoption of rules (*Hansen* v. *State Personnel Bd. of Review* [1977], 51 Ohio App. 2d 7), or that the rule is otherwise unreasonable (*Stouffer Corp.* v. *Bd. of Liquor Control* [1956], 165 Ohio St. 96).

The rule here considered was invalidated by the courts below for the reasons, *inter alia,* (1) that the authority of the board to enact a rule placing a substance in the Schedule II classification in R. C. 3719.41 was conditional, (2) that it could

only be exercised if the legislative conditions in R. C. 3719.44(D) existed, *i.e.,* as to the substance proposed to be scheduled that it appear that there is a high potential for abuse and that its abuse may lead to severe physical or severe psychological dependence, and (3) that since the evidence did not establish the existence of the legislative conditions, the board was without authority to adopt the rule.[3]

The correctness of the conclusion below that, under the

---

[3] The record discloses that at the conclusion of appellee's evidence in the trial court, a motion was made to dismiss the action for failure of a justiciable controversy. The motion was overruled and the discussion in the written decision of the trial court is confined to the validity of the rule. Upon the appeal to the Court of Appeals, no assignment of error was made as to the appellee's right to a declaratory judgment and the issue was not reached in the opinion of that court. Neither was a proposition of law initially tendered by appellant upon the issue in the appeal to this court.

After argument, and at the direction of this court, supplemental briefs were submitted and argument held with respect to the jurisdiction of the trial court to entertain a declaratory judgment action under the criteria set forth in *Burger Brewing Co.* v. *Liquor Comm.* (1973), 34 Ohio St. 2d 93. Drawing upon the discussion of this court upholding the right to declaratory judgment relief with respect to ordinances and statutes, the *Burger* court adopted the three-fold prerequisite set forth in *American Life & Accident Ins.* v. *Jones* (1949), 152 Ohio St. 287, which are (1) a real controversy between the parties (2) which is justiciable in character and (3) speedy relief is necessary to preserve the rights of the parties.

With respect to the requirement of "a real controversy between the parties" appellant urges the factual dissimilarity in the instant case as to parties, *i.e.,* here, only the board, its executive director, and appellee, and in *Burger,* in addition to the agency and the manufacturers seeking to declare the regulation void, the presence of the intervening wholesaler seeking to uphold the regulation. We are not persuaded that the non-syllabus *Burger* language emphasizing the presence of such parties, under the facts, to demonstrate the existence of a real controversy should be read to preclude the exercise of declaratory judgment jurisdiction if a real controversy otherwise exists between the agency and a regulated party. In *American Life & Accident Ins. Co., supra,* relied upon in *Burger,* declaratory judgment jurisdiction was approved with only the parties being the regulated party and the administrator of the Bureau of Unemployment Compensation. To conclude otherwise would be to condition the availability of declaratory judgment relief upon the existence of third parties adverse to a plaintiff and the willingness of such third parties to intervene. With respect to the additional *Burger* requirements that the controversy be justiciable in character and speedy relief be necessary to preserve the rights of the parties, we conclude, under the facts and under the tests delineated in *Burger,* such prerequisites are at least minimally met. The question of whether the board acted within its delegated authority essentially involves a legal question. The direct, immediate and severe economic impact upon appellee by the rule is amply demonstrated in the record to render appropriate judicial adjudication of the validity of the rule. Accordingly, we review on the merits.

evidence, pentazocine does not possess the qualities necessary to meet legislative prerequisites for placement in Schedule II brings into focus a narrow but pivotal issue for resolution in this appeal. Succinctly stated, we perceive that question to be that where the General Assembly has limited the rule making authority of an agency, unless certain facts exist and the evidence in the declaratory judgment action as to the existence of such facts is conflicting, what evidentiary standard should be applied by the trial court to determine whether such jurisdictional facts exist. In resolution of this question we need not, and do not, address what rule should be applied in declaratory judgment actions involving, directly or indirectly, questions of fact when the validity of the rule is challenged upon other grounds.

An action for a declaratory judgment pursuant to R. C. Chapter 2721 is a civil action and has been held by this court to be *sui generis* and is neither strictly one in equity nor law, but is an action to which legal or equitable principles of law are applicable dependent upon the issues. *Sessions* v. *Skelton* (1955), 163 Ohio St. 409. Pursuant to R. C. 2721.10 issues of fact are required to be tried and determined in the same manner as issues of fact are tried and determined in other civil actions in that court. The Civil Rules are applicable by virtue of Civ. R. 57.

Since we view the issue of whether the board was authorized to adopt the controverted rule as a question of law, absent a contrary ruling by this court, the ordinary preponderance of evidence rule would be applicable. Although the record is silent upon the question, conceivably this standard was the standard applied by the courts below. Appellant urges the proper standard to be applied is that set forth in its proposition of law which reads as follows:

"The standard of review in a declaratory judgment action challenging a proposed rule promulgated pursuant to Section 119.03 is whether the rule as adopted is unreasonable or unlawful. The function of the Court of Common Pleas is to determine if there is a reasonable and lawful basis for the agency's action. *If there is any evidence supporting the agency's action,* said action is reasonable."

Appellant argues in support of that standard by analogiz-

ing the declaratory judgment action, of the nature here considered, to the previously existing R. C. 119.11 review. We find the analogy of functional equivalency less than compelling in view of the distinctions drawn in *Burger, supra* (34 Ohio St. 2d 93), between review under R. C. 119.11 and a declaratory judgment action. Further, other than providing a ground for appeal for the failure to comply with procedural requirements, R. C. 119.11 set forth only the "unreasonable or unlawful" standard without further specificity. Accordingly, it is not helpful upon the issue before us.

It is readily perceivable that adoption of the "any evidence" formulation in the context of a declaratory judgment action where jurisdictional facts necessary to exist to adopt the rule are in issue, would effectively foreclose all effective challenge to the validity of the rule upon such ground except when *no* evidence existed. While the "any evidence" approach accommodates the concept of judicial deference to agency expertise, we view the balance as weighing too heavily in favor of the agency. In short, it is reasonable to assume that it would be rare that some evidence, however meager, would not exist tending to establish the jurisdictional facts to justify agency adoption of the rule. We, therefore, reject the "any evidence" test since, under it, judicial scrutiny of bureaucratic rule-making would be so limited as to render illusory the declaratory judgment pre-enforcement remedy enunciated in *Burger, supra* (34 Ohio St. 2d 93).

In rejecting appellant's proposition of law, we nevertheless perceive merit in appellant's subsidiary argument that agency expertise is a relevant factor in agency rule-making. Particularly so, where as here, the evidence is medically complex and technical in nature. This court has been sensitive to and has long recognized the distinct and separate functions of courts and administrative agencies in both rule-making and adjudication. Thus, as to agency rule-making, in the fifth paragraph of the syllabus in *Zangerle* v. *Evatt, supra* (139 Ohio St. 563), the court stated the following:

"Courts will not aid in making or revising rules of administrative officers, boards or commissions, being confined to deciding whether such rules are reasonable and lawful as applied to the facts of a particular justiciable case."

In appeals provided by law from administrative agency adjudications this court has emphasized the limited function of a reviewing court. Thus, in construing G. C. 154.73, the predecessor of R. C. 119.12, it was observed: "The purpose of the General Assembly in providing for administrative hearings in particular fields was to facilitate such matters by placing the decision on facts with boards or commissions composed of men equipped with the necessary knowledge and experience pertaining to a particular field. In providing for an appeal from the decision of such a board or commission, the General Assembly did not intend that a court should substitute its judgment for that of the specially created board or commission ***." *Farrand* v. *State Medical Board* (1949), 151 Ohio St. 222. More recently, courts were admonished, in appeals pursuant to R. C. Chapter 2506, against blatant substitution of their judgment for that of the agency's, especially in areas of administrative expertise. *Dudukovich* v. *Housing Authority* (1979), 58 Ohio St. 2d 202, 207.

The judicial deference to agency determinations upon factual questions also underlies, at least in part, the principles of law adopted by this court as to the issuance of writs of mandamus in the area of workers' compensation (*State, ex rel. Szekely*, v. *Indus. Comm.* [1968], 15 Ohio St. 2d 237; *State, ex rel. Marshall*, v. *Keller, Admr.* [1968], 15 Ohio St. 2d 203), and of the scope of review in appeals to this court from the Public Utilities Commission (*Sanders Transfer, Inc.*, v. *Pub. Util. Comm.* [1979], 58 Ohio St. 2d 21; *Cleveland Elec. Illuminating Co.* v. *Pub. Util. Comm.* [1975], 42 Ohio St. 2d 403).

The board, in adopting the rule in question, must necessarily have factually concluded upon the evidence before it that pentazocine possessed those qualities respecting dependency enumerated in R. C. 3719.44(D) which are prerequisites to placement of the drug in Schedule II. Further, it is reasonable to presume that the background, knowledge of drugs and expertise of the board entered into such factual determination.

The question then devolves into how such determination should be pragmatically considered in a declaratory judgment action asserting invalidity of the rule by the non-existence of such jurisdictional facts. We have concluded such initial agen-

cy determination can be fairly accommodated in a declaratory judgment action by according to the agency rule a presumption that the agency conclusion of the existence of jurisdictional facts was reached upon sufficient evidence and placing upon a plaintiff challenging the existence of such facts the burden to prove such non-existence by a preponderance of substantial, probative and reliable evidence upon the whole record sufficient to rebut such presumption and to establish the facts are other than as found by the agency. Absent proof of such character, the declaratory judgment court must accept the necessary factual conclusions of the agency.

By adoption of such a standard, judicial deference is accorded to the agency expertise in evaluating evidence respecting jurisdictional facts before it, but at the same time, accords to one challenging the rule the right to secure a contrary declaratory judgment adjudication, irrespective of agency expertise, that the facts are other than necessarily determined by the agency.

Appellee has tendered propositions of law through which it is asserted that, irrespective of the issue of the evidence to support the agency rule, the judgment below must, in any event, be affirmed. In summary, it is argued first that the procedures mandated in R. C. 119.03 for adoption of a rule were not followed by the board so that the rule adopted must, pursuant to R. C. 119.02, be held invalid and, secondly, that in placing pentazocine in Schedule II in R. C. 3719.41 in a category separate and apart from the categories already enumerated therein by the General Assembly, the board exceeded the authority delegated to it by the General Assembly.

The latter contention is without merit. R. C. 3719.44(A)(1) expressly authorizes the board to add a previously unscheduled compound, mixture, preparation or substance to any schedule. Nowhere in the legislative grant did the General Assembly limit or otherwise direct where, in an existing schedule, a new substance should be placed. Consequently, the placement of pentazocine in Schedule II was not creation of a new schedule, but simply placement within an existing schedule which was clearly within the board's delegated authority.

Neither do we find any merit in appellee's assertion that, under the facts in the record, procedural deficiencies respecting notice and in conducting the R. C. 119.03(C) hearing require invalidation of the rule. A principal contention in that respect is that the board failed to permit examination of witnesses as required by that part of R. C. 119.03(C) which reads, "any person affected by the proposed action***may appear and be heard in person***offer and examine witnesses***."

Two questions are posed: (1) Whether the statute affords the right of cross-examination by persons affected by the proposed action of the board and (2) whether the board otherwise afforded interested parties their statutory right to offer and examine witnesses.

In disposing of this question, the Court of Appeals contrasted the provisions of R. C. 119.03 governing rule-making proceedings with those embodied in R. C. 119.07 and 119.09, which refer to cross-examination in adjudicative proceedings, and concluded that the evident dichotomy established a legislative intent to deny the right to cross-examine witnesses in non-adversary, *i.e.*, rule-making, proceedings. Since the record documents that the board afforded an opportunity for persons affected by the proposed rule to be heard, we agree with the holding of the Court of Appeals that the procedure adopted by the board in the conduct of the hearing did not require invalidation of the rule.

Although this court is not required to weigh evidence, we have reviewed the record to determine if the evidence is sufficient to support the judgment under the evidentiary rule adopted herein. We conclude the judgment of the Court of Appeals should be affirmed under that standard. Accordingly, the judgment is affirmed.[4]

---

[4] The preponderance of substantial and probative evidence, testimonial and documentary, in the record supports the conclusion of the courts below that while pentazocine, which is a non-narcotic pain reliever, is subject to abuse and has the capacity for causing dependency, it lacks the high potential for abuse and the severe physical and psychological dependency attributes required by the General Assembly in R. C. 3719.44(D) for placement of drugs in Schedule II.

The evidence further discloses that under the federal Comprehensive Drug Abuse Prevention and Control Act of 1970, Sections 801 *et seq.*, Title 21, U.S. Code, which sets forth in Section 812(b)(2) identical criteria of placement in Schedule II as appears

*Judgment affirmed.*

CELEBREZZE, C. J., HERBERT, W. BROWN, P. BROWN, SWEENEY and LOCHER, JJ., concur.

STEPHENSON, J., of the Fourth Appellate District, sitting for HOLMES, J.

in R. C. 3719.44(D), pentazocine has not been included in Schedule II, although the appropriate federal authorities have examined pentazocine on more than one occasion. Further, only one state in the United States, South Carolina, has included pentazocine in Schedule II, although a small number of states have placed it in less restrictive schedules.