**MIDWESTERN COLLEGE OF MASSOTHERAPY et al., Appellants,**

v.

**OHIO MEDICAL BOARD et al., Appellees.**

[Cite as *Midwestern College of Massotherapy v. Ohio Med. Bd.* (1995), 102 Ohio App.3d 17.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 94APE06–863.

Decided March 21, 1995.

*Livorno & Arnett* and *Henry A. Arnett*, for appellants.

*Betty D. Montgomery*, Attorney General, *Anne Berry Strait* and *Lili C. Kaczmarek*, Assistant Attorneys General, for appellees.

REILLY, Judge.

This is an appeal from a judgment of the Franklin County Court of Common Pleas.

Appellants, in their complaint, challenged the constitutionality of Ohio Adm. Code 4731–1–05 and 4731–1–13 through 4731–1–24. They sought a declaratory judgment finding them unconstitutional and an injunction enjoining their enforcement. The primary rule challenged by appellants was Ohio Adm.Code 4731–1–05.

The trial court referred the case to a referee pursuant to Civ.R. 53 who, after a hearing, recommended that the court enter judgment for appellees Ohio Medical Board et al. and dismiss this action at appellants' costs. The court overruled appellants' objections, adopted the referee's report, entered judgment for appellees and ordered appellants to pay costs.

Appellants' basic contention is with Ohio Adm.Code 4731–1–05, which concerns the scope of the practice of massage therapy and prohibits massage therapists from using modalities such as ultrasound, diathermy, and electrical neuromuscu-

lar stimulation, as they are called, as well as other services. The part of Ohio Adm.Code 4731-1-05 which is pertinent in this case reads:

"(A) Massage is limited to the treatment of disorders of the human body by the systematic external application of touch, stroking, friction, vibration, percussion, kneading, stretching, compression, and passive joint movements within the normal physiologic range of motion; and adjunctive thereto, the external application of water, heat, cold, topical preparations, and mechanical devices.

"(B) A practitioner of massage shall not diagnose a patient's condition except as to whether the application of massage is advisable. In determining whether the application of massage is advisable, a practitioner of massage shall be limited to taking a written or verbal inquiry, visual inspection, touch, and the taking of a pulse, temperature and blood pressure.

"(C) A practitioner of massage may treat temporo-mandibular joint dysfunction provided that the patient has been directly referred in writing for such treatment to the practitioner of massage by a physician currently licensed pursuant to Chapter 4731. of the Revised Code, by a chiropractor currently licensed pursuant to Chapter 4734. of the Revised Code, or a dentist currently licensed pursuant to Chapter 4715. of the Revised Code.

"(D) Massage does not include:

"(1) The application of a high velocity-low amplitude force;

"(2) The application of ultrasound, diathermy, and electrical neuromuscular stipulation or substantially similar modalities; and

"(3) Colonic irrigation.

"(E) As used within this rule:

"(1) 'External' does not prohibit a practitioner from performing massage inside the mouth or oral cavity; and

"(2) 'Mechanical devices' means any tool or device which mimics or enhances the actions possible by the hands."

The evidence at the hearing focused on the use of such modalities. Ultrasound is a micromassage device that generates therapeutic heat in the tissues; it is a form of diathermy that uses sound waves for heating deep body structures. Electrical stimulation is used to cause muscle contraction or stimulation to reduce pain.

The massage therapists who testified at the hearing stated that the use of modalities has been an important part of their practice in the treatment of patients and the 1992 rules drastically reduced their effectiveness and the

potential for their practices. Appellants, however, did not present any corroborating witnesses from outside the parameters of their own practitioners.

Consideration of amending the scope of the practice of massage therapy began in 1986, extensive meetings and discussions with individuals and representatives of massage therapy organizations were held before the amended massage therapy rules were adopted.

The rules were ultimately supported by the American Massage Therapy Association and the Joint Council of Professional Massage Schools. It is noted that appellants do not represent the above groups. Moreover, there is no evidence of their support by those organizations. Finally, the rules were supported by the Joint Committee on Agency Rule Review, called the JCARR.

Appellants' appeal includes the following assignments of error:

"Assignment of Error No. 1.

"The court of common pleas erred by not concluding that the rules are invalid as an unlawful delegation of legislative authority.

"Assignment of Error No. 2.

"The court of common pleas erred in not holding that the scope of practice rule is unreasonable, has no basis in fact and is therefore invalid.

"Assignment of Error No. 3.

"The court of common pleas erred by failing to hold that the rule constitutes an unlawful deprivation of property without due process of law.

"Assignment of Error No. 4.

"The common pleas court erred in not holding that the regulation is unconstitutional as an unlawful invasion of privacy."

Appellants, in their first assignment of error, contend that Ohio Adm.Code 4731-1-05 and 4731-1-13 through 4731-1-25 are unlawful. In support of this assignment of error, appellants assert that the absence of standards or criteria in R.C. 4731.15(A)(1) (the statute which authorizes the medical board to promulgate rules governing the practice of a limited branch of medicine) constitutes an unlawful delegation of legislative authority.

The General Assembly cannot delegate its legislative powers to an administrative body and any such delegation would be unconstitutional. *Matz v. J.L. Curtis Cartage Co.* (1937), 132 Ohio St. 271, 8 O.O. 41, 7 N.E.2d 220, paragraph six of the syllabus. However, the legislature may pass laws which delegate administrative powers to an administrative body. *Id.*

Generally, a law which confers discretion on a board without establishing any guidelines is a delegation of legislative power and is unconstitutional. *Id.*, paragraph seven of the syllabus; *Weber v. Bd. of Health* (1947), 148 Ohio St. 389, 35 O.O. 351, 74 N.E.2d 331, at paragraph three of the syllabus. However, an exception to this general rule applies when a law concerns the state's exercise of its police powers. A law which delegates discretion without providing guidelines may nevertheless be valid and constitutional when the law relates to the protection of the public morals, health, safety, or general welfare, and guidelines would defeat the intended legislative objective. *Matz,* paragraph seven of the syllabus. In such a situation, the administrative body may issue rules and they will be a proper exercise of administrative power provided the rules are not unreasonable, discriminatory, or in conflict with the law. *Weber* at 396, 35 O.O. at 354, 74 N.E.2d at 335–336. A rule which is unreasonable, arbitrary, discriminatory, or in conflict with law is invalid and unconstitutional because it surpasses administrative powers and constitutes a legislative function. *Id.* at 398–400, 35 O.O. at 355–356, 74 N.E.2d at 336–337. Nor may an administrative body promulgate rules which add to its delegated powers. *Carroll v. Dept. of Adm. Serv.* (1983), 10 Ohio App.3d 108, 110, 10 OBR 132, 133–134, 460 N.E.2d 704, 706–707. An administrative body may only promulgate regulations consistent with and predicated upon an express or implicit statutory grant of authority. *DDDJ, Inc. v. Ohio Liquor Control Comm.* (1990), 64 Ohio App.3d 828, 831, 582 N.E.2d 1152, 1154. A rule that bears no reasonable relation to the legislative purposes of the authorizing statute improperly declares policy. *Carroll, supra,* at 110, 10 OBR at 133–134, 460 N.E.2d at 706–707.

The Medical Practices Act (R.C. Chapter 4731) is a valid exercise of the state's police power to regulate the public health and welfare and is constitutional. *Williams v. Scudder* (1921), 102 Ohio St. 305, 131 N.E. 481; *Nesmith v. State* (1920), 101 Ohio St. 158, 128 N.E. 57; *France v. State* (1897), 57 Ohio St. 1, 47 N.E. 1041.

The powers which the General Assembly has bestowed upon the State Medical Board are administrative in character. *Id.*, paragraph one of the syllabus; *Hyde v. State Med. Bd.* (1986), 33 Ohio App.3d 309, 515 N.E.2d 1015. The General Assembly has given the medical board the duty to safeguard the public's interest in having competent, properly trained and educated, and experienced doctors. *State ex rel. Copeland v. State Med. Bd.* (1923), 107 Ohio St. 20, 140 N.E. 660. R.C. 4731.05 provides that the State Medical Board shall adopt rules to carry out the purposes of R.C. Chapter 4731. R.C. 4731.15 provides that the State Medical Board shall examine and register persons desiring to practice a limited branch of medicine and establish rules governing limited branches of medicine (massage and cosmetic therapy).

■ Ohio Adm.Code 4731–1–05 (Scope of Practice: Massage) is a valid administrative rule governing the practice of massage. The rule addresses the medical board's duty to promote the public health and welfare by ensuring that people licensed to practice medicine are competent, properly trained and educated, and experienced. The rule identifies what the board has determined that a person qualified to be a practitioner of massage may safely do and not do.

■ R.C. 4731.16 provides that the State Medical Board shall prescribe rules for the examination of applicants for certification to practice a limited branch of medicine or surgery, and discusses what the examination should cover. R.C. 4731.19 states that the medical board shall determine the standing of schools, colleges, or institutions giving instruction in limited branches of medicine or surgery. An applicant, for a certificate to practice, must produce a diploma or certificate from such an institution in good standing as determined by the board, showing that all required courses of instruction have been completed. Ohio Adm.Code 4731–1–13 through 4731–1–25 regulate limited branch schools. These rules are valid administrative rules which fulfill the administrative duties the General Assembly imposes on the medical board in R.C. 4731.05, 4731.15, 4731.16, and 4731.19. These rules address the board's duty to ensure that people licensed to practice medicine in a limited branch of medicine are competent, properly trained, and educated.

Furthermore, the disputed rules are not arbitrary, discriminatory, or in conflict with the law. The reasonableness of the disputed rules is the topic of the following assignment of error.

Based on our discussion in the first assignment of error and our ruling on the following assignment of error, appellants' first assignment of error is overruled.

In their second assignment of error, appellants maintain that the scope of practice rule is unreasonable and therefore invalid. This assertion is not well taken.

■ Aside from attacking the validity of an administrative rule on the grounds that it represents an unauthorized delegation of authority, or that necessary procedural requirements were not met, an attack of an administrative rule may be premised on the ground that it is unreasonable. *Sterling Drug v. Wickham* (1980), 63 Ohio St.2d 16, 17 O.O.3d 10, 406 N.E.2d 1363.

■ The burden of proof was upon appellants to establish by a preponderance of substantial, probative, and reliable evidence upon the whole record that the disputed rule is unreasonable. *Id.,* syllabus. This involves rebutting the presumption that the administrative rule is reasonable. *Id.* When considering the reasonableness of a rule, deference is given to the agency's expertise in evaluating the reasonableness and lawfulness of the rule. *Id.* The reasonable-

ness of the scope-of-practice rule is a question of law. *Stouffer Corp. v. Bd. of Liquor Control* (1956), 165 Ohio St. 96, 99, 59 O.O. 100, 101, 133 N.E.2d 325, 327.

The gist of the testimony of appellants and their witnesses was that prior to the 1992 rule changes, they had used modalities and other techniques safely and to the benefit of their patients, and that the new rules which prohibit such practices are unwarranted and against their interests and the interests of their patients.

Appellants presented the testimony of several individuals at the hearing before the common pleas court referee. Lawrence Kramer (a named plaintiff) testified; Kramer is the president of the Ohio College of Limited Practice. Alan Gale, who owns a supplies and medical equipment company, testified. Gale's company sells therapeutic equipment (modalities); its primary customers are physical therapists, athletic trainers, and chiropractors. Robert Abdula, a massage therapist and founder and co-owner of Midwestern College of Massotherapy (a named plaintiff), testified. Robert McKinney (a named plaintiff), a massage therapist and president of Midwestern College of Massotherapy, testified. In his testimony, McKinney mentioned that the new scope-of-practice rule had reduced his yearly income by approximately $25,000.

The record indicates that appellants' opposition to the new rules is not shared by all massage therapists or massage therapy associations in the state of Ohio.

█ While appellants have argued that the modalities present no safety risk to their patients and that they have not caused harm to any patient, that does not meet their burden of proof. We reiterate, the board's rules enjoy a presumption of reasonableness. Various information in the record supports the validity of the presumption in the present case. The requirements for becoming a licensed massage therapist are not rigorous. The present rules require only that a person have a high school diploma (or equivalent) and complete a six-hundred-clock-hour course of study with a licensed massage therapy school. Ohio Adm.Code 4731–1–16(B)(1); 4731–1–19(C). This is typically accomplished in a one-year program. Nor do massage therapists have continuing education requirements. Lawrence Kramer testified that the professional standards for massage therapists were too low and that he had proposed to the medical board that two years of undergraduate study and two to three years of professional school for massage therapists would be appropriate. At the same time that Kramer lobbied for a greater scope of practice, he has taken the position that higher standards should apply to massage therapists. The scope-of-practice rule is reasonable and consistent with the current standards for becoming a licensed massage therapist.

Appellants have failed to establish by a preponderance of substantial, probative, and reliable evidence that the scope-of-practice rule is unreasonable. Accordingly, appellants' second assignment of error is overruled.

Appellants' third assignment of error asserts that the scope-of-practice rule is unduly restrictive, bears no real and substantial relationship to the public health, safety, morals, or general welfare, is unreasonable or arbitrary, and violates the Due Process Clauses of the Ohio and federal Constitutions. Appellants argue that appellee has not identified a legitimate state purpose served by the rule or a rational basis for the rule.

■■■■ There is no constitutional guarantee of the "unrestricted privilege to engage in a business or conduct it as one pleases." *Nebbia v. New York* (1934), 291 U.S. 502, 527–528, 54 S.Ct. 505, 512, 78 L.Ed. 940, 951. The state may regulate a business pursuant to its police powers when necessary for the public health, safety, or welfare. *State ex rel. Clark v. Brown* (1965), 1 Ohio St.2d 121, 30 O.O.2d 478, 205 N.E.2d 377. When the General Assembly enacts legislation, it is presumed to have decided that it bears a real and substantial relationship to the public good and is not unreasonable or arbitrary. *Id.* at 124, 30 O.O.2d at 480, 205 N.E.2d at 380. A court will not disturb such legislation unless it is apparent that the General Assembly "acted arbitrarily, capriciously and erroneously and without reason or justification." *Id.* at 124, 30 O.O.2d at 480, 205 N.E.2d at 380.

■■■ Due process "demands only that the law shall not be unreasonable, arbitrary, or capricious, and that the means selected shall have a real and substantial relation to the object sought to be attained." *Nebbia*, 291 U.S. at 525, 54 S.Ct. at 510–511, 78 L.Ed. at 950.

■■■ As previously discussed under this court's analysis of appellants' first and second assignments of error, we have found that the scope-of-practice rule properly forwards the public welfare and health. It is not unreasonable, arbitrary, or capricious. Massage therapists are not required to complete lengthy schooling to become licensed to practice. The flip side to the relatively basic educational requirements is that massage therapists must limit their practice to a narrower scope than appellants desire. Requiring massage therapists to adhere to the scope of practice set forth in the rule and not allowing them to use modalities or perform certain practices is not capricious, unreasonable, or arbitrary.

Appellants' third assignment of error is overruled.

In their fourth assignment of error, appellants assert that the scope-of-practice rule is an unconstitutional violation of the right of privacy. The privacy right

which the rule implicates is the right to choose to receive medical treatment from a massage therapist. Appellants argue that the restrictions in the new scope of practice rule will effectively deny Ohio citizens the right to receive medical treatment from a massage therapist.

Appellants compare the situation which the present case presents to that of *Andrews v. Ballard* (S.D.Tex.1980), 498 F.Supp. 1038. In *Ballard,* the court determined that the contested rules effectively rendered acupuncture unavailable in the state of Texas and that the rules thereby significantly interfered with the protected right to choose acupuncture. The court went on to find that the rules were not narrowly drawn to serve the state's interest in protecting the patient's health and were unconstitutional.

Unlike the court in *Ballard,* this court does not find that the rule unconstitutionally interferes with an individual's right to privacy. The scope-of-practice rule does not significantly interfere with an individual's right to receive medical treatment. The rule does not allow a massage therapist to administer certain forms of medical treatment. The record does not indicate that this treatment is unavailable through other medical practitioners.

Appellants' fourth assignment of error is overruled.

Appellants' four assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

TYACK and CLOSE, JJ., concur.

ARCHER E. REILLY, J., retired, of the Tenth Appellate District, sitting by assignment.